UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
No. 26-mj-00056 (JNE/DLM)

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

CHRISTINA RANK,

        Defendant.

**DEFENDANT'S MOTION FOR AN ORDER TO SHOW CAUSE, MOTION FOR RULE 16 DISCOVERY, AND AN EVIDENTIARY HEARING**

---

Defendant Christina Rank respectfully moves the Court for an Order to Show Cause why the Government should not be held in contempt and sanctioned under the Court's inherent authority for violating the Court's sealing order by publishing an inflammatory and false "press release" about Ms. Rank while the case was under seal and for providing the Court with pretextual, untrue statements that formed the basis on which Government claimed to be seeking a sealing order. Ms. Rank also moves for discovery under Federal Rule of Criminal Procedure 16 and an evidentiary hearing for the reasons stated below.

## INTRODUCTION

On January 23, 2026, Christina Rank, who had been previously arrested by federal agents on January 12, 2026, and released without charge, was charged by Complaint with

1

a felony offense under 18 U.S.C. § 111(a). She was charged in order to facilitate an elaborate publicity stunt by the Department of Justice intended to deter other protestors from engaging in constitutionally protected speech in response to the Government's unlawful execution of Operation Metro Surge in Minnesota and to support a false political narrative of the Executive Branch that federal agents were under attack in Minnesota.

In charging Ms. Rank, the Government also sought a court order sealing the Complaint and all its supporting documents, including the affidavit in support of the Complaint. ECF #3. The Court granted the Government's motion and sealed the case. ECF #4. The Government then chose to violate the Court's sealing order by orchestrating a staged photograph of Ms. Rank in handcuffs and posting it on the official X account of the United States Attorney General, Pamela Bondi, along with the photographs of other charged individuals and the names of Ms. Rank and other individuals, with inflammatory statements that Ms. Rank and the others were "rioters," and threatening that there would be "more arrests to come." The charging of Ms. Rank and others was intended to result in a court appearance on January 28, 2026, coordinated to coincide with a planned visit to Minnesota by Attorney General Bondi on January 28, 2026, and the date of the post to Attorney General Bondi's X account.

The U.S. Department of Homeland Security ("DHS")—the agency whose agent swore out the Complaint filed under seal—echoed Attorney General Bondi's post and took it several steps further in a public posting the afternoon of January 28, 2026. Again

including Ms. Rank's name and the staged photograph, DHS called Ms. Rank and the other charged individuals "Anti-ICE anarchists" who are "fighting to keep rapists, murders [sic], drug dealers, and predators in their community." These statements about Ms. Rank are false and were intended to create a false impression of Ms. Rank. Further, the next day, on January 29, 2026, Daniel N. Rosen, the United States Attorney for the District of Minnesota, issued a press release, "Sixteen Defendants Charged with Violently Assaulting Federal Officers and Property."[1] The press release stated, "Sixteen individuals who *violently assaulted* federal officers and federal property over the past several weeks have been charged in criminal complaints, announced United States Attorney Daniel N. Rosen." (Emphasis added). This statement is inconsistent with the Complaint itself filed against Ms. Rank, which was drafted and filed by Mr. Rosen's office. The statutory language cited in the Ms. Rank's Complaint omits the word "assault" from its recitation of the statutory text at 18 USC §111(a) and merely alleges that she "did forcibly oppose, impede, or interfere" with a federal agent. The Affidavit in Support of Criminal Complaint also does not use the word "assault" or set forth facts claiming that Ms. Rank "violently assaulted" federal officers.[2]

Since the posting of these inflammatory and unethical statements - which may impede Ms. Rank's opportunity to receive a fair trial - the Government has taken steps

---

[1] *https://www.justice.gov/usao-mn/pr/sixteen-defendants-charged-violently-assaulting-federal-officers-and-property*

[2] The caption on the staged photo of Ms. Rank released by Attorney General Bondi also stated, "Arrested Assault," which is inconsistent with the actual charge in the Complaint and the Government's allegations in this case as noted with respect to the January 29, 2026, press release by United States Attorney for Minnesota Daniel N. Rosen.

that make clear their intent to use the charges against Ms. Rank and others simply to intimidate other, lawful protestors.  Lacking evidence to support their charges—or in many instances, in the face of evidence directly contradicting their charges—the Government has now entirely dismissed a number of the cases against the sixteen defendants appearing in their X posts and downgraded the balance of the charges to misdemeanors.

A court order sealing a criminal case is not a suggestion, and the Court has the authority to impose civil contempt for the Government's disobedience in publicly distributing information subject to the Order. The Department of Justice has abused these judicial proceedings for a purely political act without sufficient consideration of Constitutional or ethical restraints on the Department of Justice.  The Court has both the authority and the obligation to protect the fairness and dignity of the proceedings before it. When the Government uses publicity tactics that violate a court order, intimidate the accused and potential witnesses, and undermine confidence in the judicial process, the Court may act to stop the harm, require accountability, and impose remedial measures. The Court should order the Government to show cause why sanctions and other curative relief are not warranted for the Government's violation of its order sealing Ms. Rank's case. In conjunction with this, the Court should order expedited discovery on this issue, impose a protective order, and order an evidentiary hearing.

## BACKGROUND

In December 2025, the federal government announced Operation Metro Surge, which involved an unprecedented deployment of federal immigration enforcement personnel into Minnesota's Twin Cities and the surrounding areas. *Minnesota by &*

*through Ellison v. Noem*, No. 26-CV-190 (KMM/DJF), 2026 WL 253619, at *1 (D. Minn. Jan. 31, 2026). Under the guise of immigration enforcement, thousands of heavily armed, masked, and poorly trained federal agents invaded Minnesota streets, purportedly to seek out violent criminals who were in the United States illegally. *E.g.*, 1st Am. Compl. at ¶ 99, *Tincher v. Noem*, No. 0:25-CV-4669 (KMM/DTS). That thin veneer quickly wore off when it became clear that the purpose of Metro Surge was not to root out violent criminals, but to arrest and detain Minnesotans regardless of citizenship or criminal history.[3] Compl. at ¶¶ 68, 71, *Minnesota by & through Ellison v. Noem*, No. 26-CV-190 (KMM/DJF). Countless protests occurred around Minnesota and around the country in response to Operation Metro Surge.

On January 12, 2026, Ms. Rank was exercising her First Amendment right to observe and criticize federal immigration agents parked without permission in the parking lot of the school where she is employed, the Concord Education Center in Inver Grove Heights. When she approached the parked federal agents and made her opposition clear, video evidence disclosed by the Government shows that the agents ran her license plates, obtained her home address, and stated the intention to travel to her residence about 22 minutes away.  Agents then left the parking lot of the Concord Education Center and Ms. Rank followed them. ECF #1-1. After a short drive, the Agents returned to the parking lot entrance to the Concord Education Center instead of going to Ms. Rank's residence. The Complaint alleges that as Agents sought to turn into the parking lot, Ms.

---

[3]  *E.g.*, Donald J. Trump, Truth Social (Jan. 13, 2026, 7:40 AM), *https://truthsocial.com/@realDonaldTrump/posts/115888070937502023* (telling Minnesotans that "THE DAY OF RECKONING & RETRIBUTION IS COMING").

Rank "drove into oncoming (sic) lane and across the parking lot entrance at the same time the [Deportation Officers] were turning their vehicle into the parking lot entrance. As a result, RANK's vehicle blocked the entrance. By driving into the opposite lane and in front of the DO's car while the DOs were simultaneously entering the parking lot, RANK caused a collision with the DO's car." *Id.*

Surveillance video from the Concord Education Center, however, tells a different story. The video depicts Ms. Rank's car within a marked left turn lane into the parking lot, while the DO's vehicle was in the outside lane. The DO's vehicle makes an improper left turn, without a turn signal and from the outside lane, crossing in front of Rank's vehicle and causing a collision. Armed and masked agents then exit their vehicle, surround Ms. Rank's vehicle, break out a window on her car, and extract her from her vehicle. Ms. Rank was arrested, taken to the Whipple Federal Building, and then released on that same date. These events occurred five days after a federal agent shot and killed Renee Nicole Good in south Minneapolis on January 7, 2026, followed by Border Patrol Agents invading the campus of Roosevelt High School in south Minneapolis that same day. Both of these incidents of January 7, 2026, were of great public concern and education community in Minnesota was particularly concerned about the presence of Border Patrol on a school campus.

On January 23, 2026, almost two weeks later and after a Vice Presidential visit to Minneapolis where the Vice President complained about protests[4], the Department of

---

[4] *See* Michelle L. Price, et al., *Vance's message in Minneapolis: Local officials must cooperate with the immigration crackdown*, ASSOCIATED PRESS (Jan. 22, 2026),

Justice sought a felony complaint charging Ms. Rank with violating 18 U.S.C. § 111(a)(1). Dkt. 1. The Government also petitioned the Court to seal documents, including the Complaint, Arrest Warrant, and the supporting Affidavit. ECF #3. The Government's petition to seal articulated several reasons that it required a sealing order. For one, the Government represented to the Court that nondisclosure was "necessary to prevent the ongoing investigation from being compromised." *Id.* ¶ 4. However, there was no ongoing investigation at the time the Government filed the Petition to Seal. Next, the Government stated that the seal was necessary "for the safety of officers . . . who will be effecting the arrest of the defendants [sic]." *Id.* Rank was actually arrested on the Complaint by federal agents on January 27, 2026, and then released from custody almost immediately. It appears that Ms. Rank was arrested on this date by mistake, as the Government intended to conduct a propaganda show the next day which required multiple persons to self-surrender at the same time rather than be subjected to arrests over a period of days. The Government then reached out to representatives of Ms. Rank and told her to appear in court the following day or that she would be subject to arrest. She then voluntarily self-surrendered on January 28, 2026. No officer effected this third arrest of Ms. Rank. The most egregious of the Government's misrepresentations to the Court was that:

> The documents also contain identifying information of, and circumstances relating to, an individual or individuals allegedly involved in criminal activity in some way who may not be indicted in this case. Nondisclosure of the documents at this stage is also necessary to protect their identity and/or

---

*https://apnews.com/article/vance-ice-minneapolis-deportations-trump-economy-002f1d1acf05c00aeee289ec192100e7* Vance also praised the arrest of protesters[.]")

to minimize the substantial risk that revelation of details set forth in the documents could cause to their reputation.

*Id.*

The only individual identified in the documents that the Government requested to be sealed was Ms. Rank, who was not indicted in this case. *See* ECF #1, #1-1, #2. On January 23, 2026, the Court granted the Government's petition to seal documents, finding that the Government had shown good cause. ECF #4.[5]

On January 28, 2026, Ms. Rank self-reported to the federal courthouse in Minneapolis, MN, for her initial appearance on the sealed federal Complaint. From 2:21 p.m. to 2:26 p.m. on January 28, 2026, Ms. Rank made her initial, individual appearance. ECF #7. The Government moved to unseal the case, and the Court granted the motion. *Id.* Prior to her court appearance, agents placed Rank in restraints and posed her for a photograph next to two federal agents. (Ex. A). The photograph is a head-to-waist image of Ms. Rank with handcuffs clearly visible, and with two agents next to Ms. Rank each wearing a jacket with "Police HSI" printed on the back, standing with their back to the camera. *Id.* There are no indications that this was a booking photo. *Id.*

---

[5] The first Motion to Seal was filed on January 23, 2026, (ECF #3), and represented as being signed by AUSA Matthew D. Evans. A second (and textually identical) Motion to Seal was filed on January 28, 2026, and signed by AUSA Kristian C. Weir with a signing date of January 27, 2026. (ECF#5). On February 3, 2026, the Government filed a Motion for Correction (ECF # 15), in which the Government represented that AUSA Evans had no knowledge or involvement in the case and that his name was improperly signed to the original Motion to Seal. As such, when it granted the Motion to Seal on January 23, 2026 (ECF# 4), the Court was granting a motion that had not actually been signed by an attorney for the Government. The second Order (ECF# 6) granting the Amended Motion to Seal was entered the very morning of Ms. Rank's court appearance and just hours before the Government distributed materials in violation of the Order to Seal.

On January 28, 2026, at 12:53 PM - with the Court's seal order in full effect – United States Attorney General Pamela Bondi made several posts on X (f/k/a Twitter) related to her travel that day to Minneapolis.[6]  (Ex. B). In her posts, Bondi stated that "[f]ederal agents have arrested 16 Minnesota rioters . . . who have been resisting and impeding [the Government's] federal law enforcement agents." *Id.* Tied to this post, Bondi posted the names of those she had called "rioters," which included Ms. Rank's name. At 1:12 PM, Attorney General Bondi posted a series of staged photographs showing detainees—presumably those individuals named in her 12:53 PM post—posed in the same or similar manner as Ms. Rank had been posed. Ex. C.

Although issued after the Order to Unseal had been entered by the Court, on January 29, 2026, the United States Attorney for Minnesota issued a press release titled, "Sixteen Defendants Charged with Violently Assaulting Federal Officers and Property".[7] As noted above, the press released stated, "Sixteen individuals who violently assaulted federal officers and federal property over the past several weeks have been charged in criminal complaints, announced United States Attorney Daniel N. Rosen." This statement is inconsistent with the Complaint itself. The statutory language cited in Ms. Rank's Complaint omits the word "assault" and merely alleges that she "did forcibly oppose, impede, or interfere" with a federal agent. The Affidavit in Support of Criminal

---

[6] Pamela Bondi (@AGPamBondi), X (formerly Twitter) (Jan. 28, 2026, at 12:53 PM), *https://x.com/AGPamBondi/status/2016585421027754465.*

[7] *https://www.justice.gov/usao-mn/pr/sixteen-defendants-charged-violently-assaulting-federal-officers-and-property*

Complaint does not use the word "assault" or set forth facts that Ms. Rank "violently assaulted federal officers."[8]

This coordinated media campaign to smear U.S. citizens for exercising their First Amendment rights, without regard for a sealing order, the actual elements of the charge lodged against Ms. Rank, or frankly without regard for the truth, made plain the true nature of the Department of Justice's desire to seek a sealing order on January 23rd: to permit the planning and execution of this coordinated media campaign in secret. This is not a legitimate effort, nor was it one of the proffered bases upon which the Department sought the sealing order. The fact that this was a planned, coordinated media campaign by the Department of Justice – carried out without regard to the sealing order obtained by the Government - is clear from public reporting regarding the actions of senior DOJ officials. On June 12, 2025, Reuters reported that Associate Deputy Attorney General Aakash Singh sent an email to all 93 U.S. Attorneys directing them to prioritize the prosecution of protesters and directing their offices to "[p]ush out press releases whenever you file charges in these matters."[9] The New York Times reported on March 19, 2026, that in January of 2026, Mr. Singh stated prosecutors should be "hounding"

---

[8] The caption on the staged photo of Ms. Rank released by AG Bondi stated, "Arrested Assault," which is also inconsistent with the actual Complaint and the Government's allegations in this case as was the January 29, 2026, press release by the US Attorney.

[9] *https://www.reuters.com/world/us/prosecutors-told-prioritize-publicize-cases-tied-trump-immigration-protests-2025-06-12/*

federal agents to make cases and that "officials in Washington would be "blasting out" prosecutor's work. "Go big and go loud," Mr. Singh was reported to have stated.[10]

Nor is this the first time where it appears that DOJ and DHS coordinated and planned a high publicity arrest to coincide with the visit of a high-ranking Executive Branch official to Minnesota, coupled with the release of degrading and non-public photos of the arrestee. On January 22, 2026, the Government arrested Nekima Levy-Armstrong and others charged in United States v. Armstrong, et. al., 26-CR-25(LMP)(DLM), the same date that Vice President J.D. Vance was present in Minneapolis.[11] The same morning, former Secretary of DHS Kristi Noem posted on her X account a digitally altered photo of Ms. Levy-Armstrong which falsely depicted her as distressed and crying. Within less than an hour, this photo was then reposted by the White House and Vice President J.D. Vance.[12]

Since the Attorney General and DHS posted their inflammatory and unethical statements, the Government has taken steps in these cases that have made even clearer that their primary intent was to use these charges and a coordinated media campaign to intimidate lawful protestors. Lacking evidence to support their charges—or in many instances, in the face of evidence directly contradicting the charges—the Government has

---

[10]https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html?unlocked_article_code=1.UlA.DaMw.tAKzgu3sdyvh&smid=url-share

[11]https://www.whitehouse.gov/videos/vice-president-jd-vance-delivers-remarks-in-minneapolis-minnesota-jan-22-2026/

[12] https://www.cbsnews.com/news/white-house-photo-minnesota-protester-arrest-altered-crying/

now entirely dismissed several of the cases against the sixteen defendants appearing in their X posts and downgraded the balance of the charges to misdemeanors.

**ARGUMENT**

**MOTION TO SHOW CAUSE**

"Federal law authorizes the Court to impose civil contempt for disobedience of a court order." *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23-CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025) (citing 18 U.S.C. § 401(3)). "A court may also impose sanctions pursuant to its inherent authority to punish 'conduct which abuses the judicial process.'" *VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, (1991)).

### I.      The Government's Social Media Perp-Walk Violated the Seal Order.

The Government violated the Court's seal order by publicizing Ms. Rank's name, the nature of the charges against her, and the staged perp-walk photo, while the charging documents were sealed at the Government's own request. "In a proceeding before a magistrate judge, disobedience of a lawful order shall constitute a contempt of the district court for the district wherein the magistrate is sitting." *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 504 (8th Cir. 2000) (quotations omitted). The moving party must show contempt by clear and convincing evidence and that the party allegedly in contempt had knowledge of the order at issue. The burden then shifts to the nonmoving party to show an inability to comply. *Data Axle, Inc. v. CFM Data Network, LLC*, No. 23-CV-3255 (LMP/DLM), 2025 WL 1261228, at *3 (D. Minn. May 1, 2025).

12

Here, the Chief Law Enforcement official of the United States Department of Justice – the Executive Branch agency prosecuting Ms. Rank – used a public platform to stage and publish a manufactured arrest photograph and pair it with Ms. Rank's name—functionally defeating the Court's seal order by disseminating that information to the public. This action was taken despite the Government's good cause showing which included that the seal was intended to "protect [Ms. Rank's] identity and/or to minimize the substantial risk" to her reputation. ECF #3 It is undisputable that the Government took affirmative steps to create and post this information, and undisputable that its public posting destroys any "protection" for Ms. Rank sought through the Government's petition for sealing.

The Government will likely argue that the seal order only sealed the documents filed in this matter, and that it did not expressly prohibit the posting of Ms. Rank's name, pending charges, or likeness. But contempt is not limited to situations where an order includes an itemized list of prohibited tactics. The relevant question is whether the Government's conduct - viewed in context - constituted noncompliance with the Court's order. *See City of Campbell, Mo. v. Arkansas-Missouri Power Co.*, 65 F.2d 425, 427 (8th Cir. 1933) (party is guilty of civil contempt if it violates "the letter *or* spirit" of a court order (emphasis added)); *see also Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1180 (9th Cir. 2025) (party "does not have an immunity from civil contempt because the plan or scheme which it adopted was not specifically enjoined" (citation modified)).

The context matters here. The Government's good cause showing in its own sealing petition invoked concerns about public identification and/or reputational damage to Ms.

13

Rank. The Government cannot legitimately claim that it had no knowledge of its own petition. Moreover, having persuaded the Court to seal documents on its stated rationale, the Government cannot now treat the absence of a specific restriction on name/photo publication as permission to do the very thing it told the Court sealing would prevent. In other words, in its representation to the Court, the Government raised concerns over the same issues it caused with its propagandistic perp-walk social media campaign. And in the broader context of Operation Metro Surge, the Government has shown a stunning pattern of ignoring or blatantly disobeying court orders. *See Juan T.R. v. Noem*, No. 26-CV-0107 (PJS/DLM), 2026 WL 555601, at *2 (D. Minn. Feb. 26, 2026) (Judge Schiltz detailing the 210 orders the Government had violated in 143 cases in connection with Operation Metro Surge).

"Civil contempt may be employed either to coerce the [noncompliant party] into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers*, 207 F.3d at 505. On this record, the Government's publication of a manufactured arrest photograph and the defendant's name in a post that labels Ms. Rank as a "rioter" accomplished the public identification harm that the seal order was entered to prevent. The Government had clear knowledge of the order, and it cannot reasonably show that it was unable to refrain from disseminating propaganda through social media that identified Ms. Rank by name and the charges against her.

Accordingly, the Court should order the Government to show cause for why it should not be held in contempt for violation of the seal order. Should the Government be held in contempt, the Court should enforce its seal order in a manner that preserves its

practical effect and compensate Ms. Rank accordingly—at a minimum, by forcing the Government to take down its social media posts relating to Ms. Rank and sanctioning the Government for it conduct.

**II.     Even Apart from the Seal Order, the Court Should Sanction the Government Under its Inherent Authority for Misconduct that Abuses the Judicial Process.**

The Government's tweets were not neutral docket notices or unavoidable disclosures, but rather, a deliberate and government-created publicity event: a staged custody photo, paired with Ms. Rank's name, falsely accusing of her of "riot" and of "assault" inconsistent with the Complaint, and distributed throughout the United States by the Attorney General's and DHS's official social media accounts. Because these tactics inappropriately announced Ms. Rank's guilt and potentially intimidated witnesses, sanctions are appropriate. *See Fredin v. Middlecamp*, No. 17-CV-03058 (SRN/HB), 2020 WL 6867424, at *11 (D. Minn. Nov. 23, 2020), *aff'd,* 855 F. App'x 314 (8th Cir. 2021) (imposing sanctions against party for creating websites intimidating and disparaging other litigants and their counsel); *United States v. Bowen*, 799 F.3d 336, 350 (5th Cir. 2015) (imposing sanctions when prosecutors posted online comments that spoke to the guilt of defendants).

Sanctions under the Court's inherent power are appropriate when a party's conduct "abuses the judicial process" and is "tantamount to bad faith." *Snowden v. Time Safe, Inc.*, No. CIV. 10-4516 JNE/JJG, 2012 WL 2569052, at *3 (D. Minn. May 30, 2012), *report and recommendation adopted*, No. CIV. 10-4516 JNE/JJG, 2012 WL 2571206 (D. Minn. July 3, 2012). Here, the facts support that threshold because the Government's conduct was

15

deliberate as evidenced by the staged photos, was amplified on a high-ranking official's social media account, falsely accused Ms. Rank of "assault" when the Complaint filed against her did not, and was foreseeably harmful to the fairness and dignity of the proceedings.

Now, Ms. Rank is on notice that the Government will not hesitate to publicize information about her and her case, whether true or not. This could certainly have an impact on whether witnesses are willing to come forward or testify in this case. *See Garcia v. Bertsch*, 470 F.3d 748, 750 (8th Cir. 2006) (acknowledging witnesses' reluctance to testify when presented with "spectacle" and "repercussions").

The Government should be ordered to show cause why the Court should not find misconduct warranting inherent-authority sanctions.

## FED. R. CRIM. P. 16 MOTION FOR DISCOVERY, PROTECTIVE ORDER, AND EVIDENTIARY HEARING

Federal Rule of Criminal Procedure 16 provides that "the government must permit the defendant to inspect and to copy or photograph" documents and objects "within the government's possession, custody, or control" and that are "material to preparing the defense." Rule 16 further permits the Court to grant "appropriate relief" regarding discovery "for good cause." *Id.* The Government's taking, use, and dissemination of the staged photo of Ms. Rank had no legitimate law enforcement purpose. The false allegations by the United States Attorney that Ms. Rank had engaged in "violently assaulting" federal officer had no legitimate law enforcement purpose. Instead, the timing of the photo's dissemination and its use on Government social media, followed by the

16

press release from the United States Attorney's Office on January 29, 2026, is evidence that the Government charged Ms. Rank to deter and intimidate other protestors and to promote the political messaging goals of Operation Metro Surge. Ms. Rank contends that on January 12, 2026, she was targeted by federal agents for her expressive activity protected by the First Amendment, as shown by the action of federal agents in identifying her, locating her home address, and stating their intent to go to her home without any legitimate law enforcement purpose. Federal agents then returned to the Concord Education Center where they were not engaged in any immigration enforcement action, and deliberately caused a motor vehicle accident by illegal driving behavior in order to have a pretext to arrest Ms. Rank. Information related to the coordination among federal agents and the Department of Justice to then use Ms. Rank's arrest as fuel for its propaganda operations is material to Ms. Rank's defense and the Government must produce it.

The Government's unethical disclosure of the staged photo of Ms. Rank is directly contrary to federal policies, which provide that "[d]epartmental representatives should not make available photographs of a defendant unless a law enforcement function is served thereby." 28 C.F.R. § 50.2; *See Detroit Free Press Inc. v. United States Dep't of Justice*, 829 F.3d 478, 484 (6th Cir. 2016) (holding that "[i]ndividuals enjoy a non-trivial privacy interest in their booking photos, and citing "the *federal* regulations and policies drafted by the U.S. Department of Justice and the [United States Marshal Service] prevent[ing] mug-shot disclosure absent a law-enforcement purpose" (emphasis original)). In accordance with this policy, the USMS releases "photographs of fugitives or other

17

prisoners *only for law enforcement purposes.*" *Booking Photographs Disclosure Policy*, U.S. Marshals Serv. Off. Gen. Counsel.[13]

The USMS also prohibits its employees from "pos[ing] prisoners for pictures," "subject[ing] prisoners to embarrassment," or "disclos[ing] . . . photographs of prisoners." *Prisoner Photographs*, U.S. Marshals Serv.[14] To this end, USMS, itself, "has consistently taken the position that booking photographs implicate personal privacy and should not be released under the [Freedom of Information Act] unless a countervailing public interest is involved." *Booking Photographs Disclosure Policy* at 2 (noting a privacy interest in booking photos "has recently been affirmed by two U.S. Courts of Appeals in decisions upholding USMS's refusal to release booking photographs in response to FOIA requests").

There was no legitimate law enforcement purpose for publicizing the photo of Ms. Rank to millions of X users through the Attorney General and DHS X accounts. Instead, the public dissemination of that photo—as the Government's agencies have recognized in their own internal policies and memorandum—invaded Ms. Rank's privacy interests and put her personal safety at risk from those who might feel emboldened by the Government's propaganda against protestors, and who now know her name and appearance. *Cf.* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes" from FOIA disclosure requirements to the extent that such

---

[13] *https://www.usmarshals.gov/sites/default/files/media/document/booking-photography-disclosure-policy.pdf* (emphasis added).

[14]*https://www.usmarshals.gov/what-we-do/prisoners/operation/prisoner guideline/prisoner-photographs*.

disclosure "would deprive a person of a person of a right to a fair trial," "could reasonably be expected to constitute an unwarranted invasion of personal privacy," or "*could reasonably be expected to endanger the life and physical safety of any individual*" (emphasis added)).

## MOTION FOR DISCOVERY

Defendant moves for the following expedited relief pursuant to Federal Rule of Criminal Procedure 16.

(1)     Disclosure of the identity of any DHS agents, U.S. Marshal personnel, Department of Justice Personnel, or other government personnel who participated in arranging, taking, or appearing in the staged photo of Ms. Rank after her self-surrender on January 28, 2026;

(2)     Disclosure of any communications by and between any officials at the Department of Justice or DHS regarding the publication of Rank's photo by Attorney General Bondi's X account or DHS's X account, or the timing of Ms. Rank's charging and self-surrender as part of a group of individuals to coincide with the planned visit of Attorney General Bondi to Minnesota.

(3)     Documents, recordings or summaries of directions provided to United States Attorneys by Deputy Associate Attorney General Aakash Singh to prioritize prosecution of protester cases to be coupled with issuing press releases, "blasting out" the filing of charges, including any reports or responses to said directions by the United States Attorney's Office for Minnesota.

## MOTION FOR EVIDENTIARY HEARING

Finally, Ms. Rank moves for an evidentiary hearing regarding her motions to determine both the extent of the privacy violations identified herein as well as the impetus behind such violations. Such information and evidence is relevant to the above motions. Such information also falls within the Court's *Brady* order issued in this case.

19

Ms. Rank further requests that the Court order the appearance at the hearing of any individuals identified pursuant to the above-described discovery request, as well as any personnel tasked with responding or gathering information related to the above-listed discovery requests.

## CONCLUSION

Defendant Rank respectfully requests that the Court order the Government to show cause for why it should not be held in contempt for violation of the sealing order in this case and why it should not be sanctioned under the Court's inherent authority. Ms. Rank further requests the Court order expedited discovery and an evidentiary hearing relating to the Government's social media posts in question and the coordination and staging of her court appearance to coincide with Attorney General Bondi's visit to Minnesota and planned media strategy to disseminate information about Ms. Rank without regard to the existence of a sealing order.

Dated: March 20, 2026                    S/BRUCE D. NESTOR
                                         Bruce D. Nestor, 0318024 – MN
                                         DE LEÓN & NESTOR, LLC
                                         3547 Cedar Avenue South
                                         Minneapolis, MN  55407
                                         (612) 659-9019
                                         (612) 436-3664 –Facsimile
                                         nestor@denestlaw.com

                                         ATTORNEY FOR CHRISTINA RANK

20