UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
26-mj-56(JNE/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **DEFENDANT'S MOTION** |
| Plaintiff, | ) | **FOR DISCLOSURE –** |
| | ) | **OFFICER CONDUCT IN** |
| v. | ) | **THREATENING,** |
| | ) | **CONFRONTING,** |
| CHRISTINA RANK, | ) | **IDENTIFYING AND** |
| | ) | **RETALIATING AGAINST** |
| Defendant. | ) | **CITIZEN OBSERVERS** |

Defendant, Christina Rank, by and through counsel Bruce D. Nestor of De León and Nestor, LLC states as follows in support of her Motion for Disclosure:

INTRODUCTION

Beginning in December of 2025 through February of 2026, the federal government deployed thousands of federal agents to Minnesota. Almost uniformly, these agents acted as if they were a secret police force. They concealed their identities by wearing masks, failed to display name or number identification badges, used false license plates on their vehicles, and took other steps to conceal their identity from the public. At the same time, both judicial findings and citizen observers documented widespread acts of misconduct by federal agents including the excessive use of force, retaliation against citizens engaged in protected First Amendment activity, and false reporting of threats and assaults on federal agents.

By this Motion for Disclosure, Ms. Rank seeks information held by the Government which is subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963)

1

and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972) and its progeny, which would allow Ms. Rank to identify whether the federal agents and witnesses in her case were involved in other acts of misconduct or false statement, evidence of which would be admissible at trial of this matter under Fed.R.Evidence 404(b).

ARGUMENT

Rule 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Propensity evidence, whether of a person's general character or examples of specific bad acts, is ordinarily excluded because of the likelihood the jury may misuse it. *United States v. Johnson*, 439 F.3d 884, 887 (8th Cir. 2006)

Rule 404(b) provides, however, evidence of prior bad acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) is thus "a rule of inclusion rather than exclusion and admits evidence of other crimes or acts relevant to any issue in the trial, unless it tends to prove only criminal disposition." *United States v. Simon,* 767 F.2d 524, 526 (8th Cir.1985) (internal quotations omitted). Thus, evidence of prior bad acts "probative of the crime charged" is not excluded under Rule 404(b). *United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.1985).

Other acts evidence is admissible under Rule 404(b) if it is 1) relevant to a material issue raised at trial, 2) similar in kind and close in time to the crime charged, 3) supported by sufficient evidence to support a jury finding that a witness committed the

2

other act, and 4) its probative value is not substantially outweighed by its prejudicial value. *United States v. Kern,* 12 F.3d 122, 124–25 (8th Cir.1993).

The Eighth Circuit has explicitly recognized that Rule 404(b) is not limited to prior bad acts but can encompass acts occurring after the incident alleged in the case. In *United States v. Kitchen*, the court stated that Rule 404(b) "is not limited to evidence of prior bad acts; instead, it expressly encompasses 'any other crime, wrong, or act." *United States v. Kitchen,* 149 F.4th 1019, 1026 (8th Cir. 2025), *reh'g denied*, No. 24-1777, 2025 WL 2659221 (8th Cir. Sept. 17, 2025).

The court in *United States v. Grady* similarly held that "the rule permitting admission of extrinsic bad act evidence for a non-propensity purpose embraces not only prior acts but subsequent conduct." *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023). *See also United States v. Thomas*, 593 F.3d 752, 758-59 (8th Cir. 2010) (permitting admission of subsequent drug activity occurring four years after the charged conduct because "[c]onsidering the similarities ... we cannot say the mere passage of four years' time renders the evidence irrelevant to show knowledge or intent"); *United States v. Johnson*, 934 F.2d 936, 939-40 (8th Cir. 1991)(permitting the admission under Rule 404(b) of two drug transactions that occurred weeks after the charged conduct as probative of the defendant's knowledge and intent).

Federal Rule of Evidence 404(b) permits the admission of evidence of subsequent bad acts offered for non-propensity purposes if the evidence is relevant to a material issue, the evidence is similar in kind and close in time to the crime charged, the evidence is proven by a preponderance of the evidence, and the potential prejudice does not

3

substantially outweigh its probative value. *United States v. Grady*, 88 F.4th 1246, 1258 (8th Cir. 2023).

Ms. Rank contends that federal agents targeted her for retaliation and arrest because on January 12, 2026, she verbally confronted immigration agents present in the parking lot of the Concord Education Center, where she is employed, and asked them to leave the property of the school. Body camera evidence disclosed by the Government shows federal agents responding to Ms. Rank's verbal statements by running her license plate, identifying her by name, locating her home address, and agreeing to travel to that address. Federal agents then departed the parking lot of the Concord Education Center, only to quickly make a U-turn and travel in the direction of the school. Federal agents then deliberately rammed Ms. Ranks's vehicle for the purpose of creating a pretext to arrest her. Video evidence shows a vehicle driven by a federal agent making an improper left turn in front of Ms. Rank, from the wrong lane and without a turn signal, as he rammed her vehicle. Both at the time they were initially in the parking lot of the Concord Education Center and when they returned to the area of the school, the federal agents were not actively engaged in immigration enforcement and were instead focusing on retaliating against Ms. Rank for her expressive activity.

Although apparently no federal agent has yet been held accountable for any act of misconduct or false statement during Operation Metro Surge in Minnesota, there is widespread documentation showing such potential misconduct occurred. The American Civil Liberties Union of Minnesota (ACLU) has collected declarations from over 80 Minnesotans documenting how federal agents used excessive force, chemical irritants,

and less lethal munitions as means of retaliation directed at individuals engaged in protected First Amendment activity.[1]  These declarations were submitted in support of a class action lawsuit in *Tincher v. Noem*, 0:25-CV-4669 (KMM/DTS) (District of Minnesota, 2/13/26). Although the litigation in *Tincher* continues, the Court has already made a number of findings that federal agents have engaged in misconduct and acts of giving false statements. *See, e.g., Tincher v. Noem,* No. 0:25-CV-4669 (KMM/DTS), 2026 WL 125375, at *26 (D. Minn. Jan. 16, 2026) (finding that the sworn declaration of ICE Director Easterwood was "largely contradicted" by video evidence). Such findings mirror similar findings of federal courts around the United States regarding the actions of federal immigration agents. For example, Judge Sara Ellis, who heard testimony and received evidence related to DHS' First Amendment violations in Chicago, determined that DHS agents and officials made false statements and lacked credibility. *See, e.g., Chicago Headline Club, et al. v. Noem, et al.*, No. 25 cv 12173, 2025 WL 3240782, at *9-13 (N.D. Ill. Nov. 20, 2025)(documenting numerous false statements under oath by ICE agents and officials).[2]  Similarly, ICE agents have lied to federal investigators in the District of Minnesota, resulting in the procurement of arrest warrants and filing of

---

[1]  *https://www.startribune.com/more-than-80-minnesota-observers-and-protesters-detail-mistreatment-by-ice/601581136*

[2] *See also* Jon Seidel, *Tracking every known federal prosecution in Chicago tied to Trump's immigration blitz*, Chicago Sun-Times, February 18, 2026, (available at https:*//chicago.suntimes.com/2026/tracker-federal-prosecutions-chicago-status-trumps-immigration-blitz-ice*) (recording that of thirty-two federal cases brought in Chicago alleging assault on a federal officer, three had been rejected by the grand jury, one had resulted in acquittal, and fourteen others had been voluntarily dismissed by the government, and no defendants had been convicted).

criminal charges based on these lies.[3]  Although federal agencies and authorities may not be holding these agents accountable, state prosecutors have identified at least 17 incidents involving potential unlawful conduct by federal agents.[4]

The actions of federal agents in retaliating against civilians involved in documenting and criticizing the actions of agents during Operation Metro Surge appear to have been carried out pursuant to the direction of senior officials within the Department of Homeland Security (DHS) and with the collusion of senior officials within the Department of Justice (DOJ) as part of an effort to justify the political basis for Operation Metro Surge. On June 12, 2025, Reuters reported that Associate Deputy Attorney General Aakash Singh sent an email to all 93 U.S. Attorneys directing them to prioritize the prosecution of protesters and directing their offices to "[p]ush out press releases

---

[3] *See, e.g.,* Government's Motion to Dismiss Complaint with Prejudice, *United States v. Aljorna*, Case No. 26-mj-23, ECF No. 48 (D. Minn., filed Feb. 12, 2026) ("Newly discovered evidence in this matter is materially inconsistent with the allegations in the Complaint Affidavit, filed on January 16, 2026, as ECF 1-1, as well as the preliminary-hearing testimony (ECF 18, 19) that was based on information presented to the Affiant [by ICE agents]."); Government's Motion to Dismiss, *United States v. Youssouf*, Case No. 26-mj-85, ECF No. 23 (D. Minn., filed Feb. 18, 2026) (voluntarily dismissing case where affidavit supporting complaint stated agents told investigator that defendant had violently assaulted them, including kicking and punching them); Government's Motion to Dismiss, *United States v. Collyard*, Case No. 25-mj-854, ECF No. 20 (D. Minn., filed Jan. 20, 2026) (voluntarily dismissing case where agents told investigator defendant had threatened to kill officers and tackled officer); Minute Entry, *United States v. Espinoza-Espinoza*, Case No. 26-mj-30, ECF No. 10 (D. Minn., dated January 26, 2026) (recording government motion to dismiss complaint where affidavit supporting complaint stated agents told investigator that defendant rammed agents with his car, injured agents and resisted arrest).

[4] *https://www.startribune.com/greg-bovino-other-federal-agents-investigated-for-actions-during-operation-metro-surge/601591378?utm_source=newsletter&utm_medium=email&utm_campaign=breaking_news&utm_term=Breaking%20News*

whenever you file charges in these matters."[5] The New York Times reported on March 19, 2026, that in January of 2026, Mr. Singh stated prosecutors should be "hounding" federal agents to make cases and that "officials in Washington would be "blasting out" prosecutor's work. "Go big and go loud," Mr. Singh was reported to have stated.[6] Reporting by multiple media outlets have documented that federal agents are photographing civilian observers and using facial recognition technology to identify observers.[7] Multiple observers have reported having federal agents turn up outside their home for purposes unconnected with immigration enforcement activities.[8] One example of this pattern of behavior was reported by former Minnesota State Senator Matt Little, who after observing federal agents from his vehicle, found agents later waiting outside his home. Agents moved to block his car and claimed he had impeded their investigation. Mr. Little was ultimately not cited, arrested or charged.[9]

Ms. Rank seeks disclosure of the following information regarding the actions of the federal agents involved in her arrest in order to establish that they acted with the

---

[5]https://www.reuters.com/world/us/prosecutors-told-prioritize-publicize-cases-tied-trump-immigration-protests-2025-06-12/

[6]https://www.nytimes.com/2026/03/19/us/politics/justice-dept-prosecute-protesters.html?unlocked_article_code=1.UlA.DaMw.tAKzgu3sdyvh&smid=url-share

[7]https://www.nytimes.com/2026/01/30/technology/tech-ice-facial-recognition-palantir.html?unlocked_article_code=1.VFA.qp1I.UiPTaPQJDS6U&smid=url-share

[8] https://www.mprnews.org/story/2026/01/13/ice-using-private-data-to-intimidate-observers-and-activists-advocates-say

[9] https://theintercept.com/2026/03/05/ice-cbp-minnesota-surveillance-intimidation-observers/

motive and intent to retaliate against civilian observers who sought to document their actions or criticize their actions. Such material is subject to disclosure under *Brady* and *Giglio* and Rule 16(a)(1)(E)(i) as information which is material to preparing Ms. Rank's defense at trial:

A.  Documentation relating to photos of any "agitators," citizens, protesters, or observers, taken by any of the federal agents involved in Ms. Rank's arrest during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/28/26. This specifically requests, but is not limited to, photos of any person accused by the federal agent of impeding, obstructing, or interfering with federal agents and information related to the inclusion of such photos in any database maintained by federal agents or contractors for the purposes of use by federal agents;

B.  Documentation of any license plates run by the federal agents through any law enforcement database and whether any personal identifying information including name, residential address, or date of birth, was obtained with respect to any "agitators," citizens, protesters, or observers, from 12/1/25 through 2/28/26. This request includes all documents related to any time that the federal agents went to the home of an observer, whether or not the observed was arrested or charged, based on such information;

C.  All reports and documents reflecting the factual basis or reasons that the federal agents took photos or sought personal identifying information of civilians not subject to immigration enforcement action, including claims that the civilians impeded, obstructed, or assaulted, federal agents.

D.  A list of all persons arrested or detained by each of the federal agents, other than for civil immigration enforcement reasons related to that individual, or for whom the federal agents appear in reports related to the arrest of said person, during the course of the federal agent's deployment in Minnesota during Operation Metro Surge from 12/1/15 through 2/28/26.

E.  Any video footage known to or possessed by the Government (including bystander video and video created by law enforcement (including body camera footage) created by or depicting the federal agents involved in the incident of 1/12/2026 with Ms. Rank, during the dates of their deployment/involvement with Operation Metro Surge from 12/1/25 through 2/28/26, with respect to the stopping, questioning, detaining, or arresting of, civilian observers who were alleged to be

photographing, following, or alerting other persons to the presence of federal agents.

F. Any training materials, policies, briefings, or directives with respect to the photographing, confronting, detaining, arresting, or obtaining personal identification of, civilian observers for any purpose during the implementation of Operation Metro Surge from 12/1/25 through 2/28/26, including the taking of those actions based on claims that such observers were impeding, obstructing or assaulting federal agents.

## CONCLUSION

This motion is based on the indictment, records and files in the above-entitled action and any and all other matters which may be presented prior to or at the time of the hearing of said motion. Ms. Rank asks that this matter be set for hearing, and that upon hearing, the Court order the Government to disclose the above enumerated items.

Date: March 22, 2026                    S/BRUCE D. NESTOR
                                        Bruce D. Nestor, 0318024 – MN
                                        DE LEÓN & NESTOR, LLC
                                        3547 Cedar Avenue South
                                        Minneapolis, MN  55407
                                        (612) 659-9019
                                        (612) 436-3664 – Facsimile
                                        nestor@denestlaw.com

                                        ATTORNEY FOR CHRISTINA RANK