UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 26-mj-56 (JNE/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S CONSOLIDATED |
| v. | ) | RESPONSE TO DEFENDANT'S |
| CHRISTINA RANK, | ) | PRETRIAL MOTIONS |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and William L. Richards, Special Assistant United States Attorney, hereby submits its consolidated response to defendant's pretrial motions. The United States opposes the motions as they seek materials beyond the scope of permissible discovery and fails to demonstrate materiality to the preparation of the defense. The United States further requests leave to file supplemental briefing, if necessary, based on any reply or argument before the Court.

**STATEMENT OF FACTS**

On January 12, 2026, ICE Enforcement and Removal Operations officers were conducting immigration enforcement pursuant to "Operation Metro Surge" in Inver Grove Heights, Minnesota, near 9165 Cahill Avenue, with additional officers parked nearby at 9015 Broderick Blvd.

A white Honda pulled next to the officers SUV and the female driver, now known to be the defendant, CHRISTINA RANK, yelled, "are you ICE?". Officer

1

James replied, "yes we are, how can we help you?". Recovered video footage of the interaction depicts RANK screaming at the officers "you are terrorists, we hate you, get out of here, you kidnap people" and honking her horn for approximately 90 seconds

RANK's conduct caused the officers to leave the lot. RANK followed the agents at a close distance. (depicted below). This interaction, including RANK's arrest, was captured on video surveillance.

  

Officers attempted to locate local law enforcement, but RANK continued to follow, executed a U-turn, and pursued the officers back toward the original parking lot. Surveillance video shows RANK driving into the opposite lane, cutting off the officers' SUV as it attempted to turn, and blocking the entrance, resulting in a collision.

Recovered video surveillance depicted the officer's attempt to make a left turn back into the same parking lot that they started from, RANK's car invading the opposite lane, cut across marked lines in the roadway, blocking the agent from

entering the lot, and causing the collision.   As a result, RANK's white car blocked the entrance (depicted below)





Officers activated emergency lights and ordered RANK to exit her vehicle. After refusing commands, RANK was removed and arrested. RANK was arrested, a crowd formed, and RANK was transported for processing.  Following *Miranda*, RANK made numerous admissions. RANK she approached the officers, honked her horn to alert others, called them "terrorists and Nazis", followed and blocked their vehicle, and caused the collision. RANK further acknowledged that if she did this to another law enforcement agency she should be arrested.

## ARGUMENT

The United States has fully complied with its discovery obligations under Federal Rule of Criminal Procedure 16, as well as constitutional and statutory

duties under *Brady*, *Giglio*, and related authority. RANK has failed to demonstrate that the requested materials are material under Rule 16(a)(1)(E), improperly seeks information outside the scope of Rule 404(b), and demands speculative law enforcement misconduct materials under *Brady* and *Giglio*. RANK's asserted "retaliation" theory is not a recognized defense under 18 U.S.C. § 111, making the requests immaterial and irrelevant. Accordingly, RANK's motions should be denied.

## I. DISCOVERY REQUESTS (ECF NOS. 35-37)

The Government has produced discovery pursuant to Fed. R. Crim. P. 16(a)(1)(A)–(F), including reports, video, and audio recordings (produced via USA-FX on March 11, 2026). RANK asserts additional materials under Rule 16(a)(1)(E), Rule 404(b), and *Brady*/*Giglio*, claiming they are "material to the preparation of RANK's defense." See ECF Nos. 35, 37. These assertions are conclusory and provide no factual proffer or affidavit connecting the requested materials to a legally recognized defense. See ECF Nos. 35, 37.

Criminal defendants do not have a general right to "open file" discovery. *United States v. Johnson*, 228 F.3d 920, 925 (8th Cir. 2000). Rule 16 limits discovery to items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Materiality requires more than conclusory allegations. *United States v. Farah*, No. 22-CR-124 (NEB/TNL), 2023 WL 8757097, at *9 (D. Minn. Dec. 19, 2023); *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985). Speculation alone does not satisfy Rule 16. *United States v. Ivers*, 2023 WL 2182327, at *2 (D. Minn. Feb. 23,

2023). RANK's requests are speculative and immaterial because they assert only that the materials "will help with the preparation of his defense" without factual support, and because RANK's claimed "retaliation" is not a legally recognized defense.

RANK contends that materials from multiple sources over approximately 89 days will demonstrate a claim of "retaliation." ECF 36. Retaliation, however, is not a cognizable defense under 18 U.S.C. § 111, and liability under the statute is objective, based on the defendant's intentional conduct rather than the officer's motive. A subjective belief that an officer was retaliating does not establish a valid self-defense claim absent imminent unlawful force or imminent threat of harm. See *United States v. Davidson*, 108 F.4th 706, 712–13 (8th Cir. 2024). RANK makes no such allegations and does not allege an imminent threat or any other basis that would constitute a legally recognized defense under § 111.

Further, an individual is not justified in using force to resist an arrest, retaliate, or interfere with a law enforcement officer performing lawful duties. See *United States v. Drapeau*, 644 F.3d 646, 653–54 (8th Cir. 2011); *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005) (citing *United States v. Dawdy*, 46 F.3d 1427, 1430–31) (resistance to an illegal arrest can furnish grounds for a second, legitimate arrest); *United States v. Lopez*, 710 F.2d 1071, 1074 n.3 (5th Cir. 1983). RANK's subjective belief that the officer was retaliating does not transform her claim into a recognized defense, and it cannot justify discovery under Rule 16, Rule 404(b), *Brady*, or *Giglio*.

Accordingly, RANK's "retaliation" theory is not a cognizable defense, and her requests for broad discovery are speculative, immaterial, and legally unsupported. These requests are untethered to any recognized defense and irrelevant to guilt or punishment and should be denied. See U*nited States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013); *United States v. Hamilton*, 452 F.2d 472, 479 (8th Cir. 1971).

### A. Bullets A-F (ECF 35 at 8-9)

RANK requests materials from December 1, 2025, to February 28, 2026, including photographs, license plate data, unrelated arrests, video, and training or policy materials. These materials are not covered by Rule 16 and are irrelevant. See *Polk*, at 238, 249 (8th Cir. 2013). Requests for agency-wide photos, identifying information, unrelated arrests, or operational policies across multiple federal agencies over a twelve-week period are immaterial under Rule 16(a)(1)(E). RANK asserts these materials are "material" without explanation or authority.

In bullet A, RANK requests "documentation, photographs and video taken by federal agents of civilians, including those allegedly impeding or interfering with agents". These materials are untethered to RANK's January 12, 2026 arrest, cover non-witnesses, documentation, photographs, and alleged database entries unrelated to the conduct charged. Disclosure of these materials or even acknowledgment of the existence of such databases would reveal sensitive law enforcement operations, investigative methods, and internal procedures, potentially compromising ongoing and future investigations. The request is immaterial, speculative, and overbroad as

6

it covers data unrelated to the incident or individuals involved.

Under bullet B, RANK requests "all license plate reads for civilians not subject to enforcement." This request is both temporally and substantively overbroad, encompassing data unrelated to the incident and individuals with no connection to the case. Such information is not material to any articulated defense. Disclosure is not required for immaterial, non-testifying individuals.

Under bullet C, RANK seeks "reports explaining why agents photographed or collected information on civilians, including obstruction claims". These reports concern operations beyond the charged incident and involve non-testifying individuals. Further, disclosure of these materials or even acknowledgment of the existence of such information would reveal sensitive law enforcement operations, investigative methods, and internal procedures, potentially compromising ongoing and future investigations. The Government need not produce internal rationales unrelated to the offense under Rule 16 or *Brady* or *Giglio*.

Under bullet D, RANK requests a "list of all persons arrested or detained, excluding immigration enforcement arrests". These records are unrelated to RANK, the charged conduct, and constitute an impermissible fishing expedition. Disclosure would involve voluminous, irrelevant data and should be denied.

Under bullet E, RANK seeks "bystander and law enforcement video of federal agents interacting with civilians for every encounter over a twelve-week period, regardless of the content or origin." Rule 16 does not require the Government to obtain or produce unidentified third-party materials outside its custody or control,

7

particularly where no nexus to the charged conduct is established. Furthermore, such a broad request is a fishing expedition untethered to the conduct charged and irrelevant in nature to any defense, Rule 16, *Brady*, *Giglio*, or Jenks. As such, this overbroad request should be denied.

Under bullet F, RANK seeks "training materials, policies, and directives concerning photographing or detaining civilians, including internal guidance related to "Operation Metro Surge". Generalized training or policy materials do not satisfy Rule 16's materiality standards and are routinely rejected. The requested materials are unrelated to the charged conduct, protected as attorney work product, and reviewing them across multiple agencies would impose a substantial burden that far outweighs its probative value. See *United States v. Bowie*, 618 F.3d 802, 818 (8th Cir. 2010); *United States v. Ruiz*, 536 U.S. 622, 629 (2002); *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *United States v. Nobles*, 422 U.S. 225, 238 (1975); *United States v. Williams*, 2024 WL 4589865, at *3–4 (D. Minn. Oct. 28, 2024). Disclosure could also compromise sensitive law enforcement information. The request should be denied.

Taken together, these requests seek broad categories of information across multiple agencies without any case-specific nexus. They also improperly target non-testifying individuals. A defendant has no right to pretrial disclosure of such materials. See *United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013); *United States v. Hamilton*, 452 F.2d 472, 479 (8th Cir. 1971). Accordingly, the motion should be denied.

### a. Video, Audio Communications, and Documentation (Bullets A-C, ECF 37 at 1-2)

RANK seeks video footage, radio communications, and documentation from before and after RANK's arrest on January 12, 2026. To the extent such requests fall within the scope of Rule 16 or the Jenks Act, the Government has complied with its obligations and has produced the responsive materials. To the extent RANK seeks information beyond those requirements, the request is overbroad, not material to the defense, and not subject to disclosure.

### b. Inter-Agency Communications (Bullet D, ECF 37 at 2)

RANK requests "all documents, communications, phone records, text messages, chats, emails, transmittals, and any other exchange of information" among ICE, DHS, CBP, the U.S. Attorney's Office, the Department of Justice, or other authorities regarding potential or actual charging, declination, dismissal, or recharacterization of any criminal charges." ECF No. 37 at 2. RANK fails to show materiality or relevance to her non-recognized "retaliation" defense.

When multiple federal agencies are involved, a defendant must make a focused, specific request and show materiality. See *United States v. Bryan*, 868 F.2d 1032, 1082–83 (9th Cir. 1989). Mere speculation regarding the existence of documents does not justify production. Id. at 1083; see also *United States v. Ivers*, 2023 WL 2182327, at *2 (D. Minn. Feb. 23, 2023).

Rule 16 allows discovery of statements made by defendants, but not of others

and does not require the Government to "hunt" for documents across multiple agencies absent a focused request. See *United States v. Dornsbach*, 2023 WL 2666480, at *2 (D. Minn. Mar. 28, 2023) (citing *United States v. Mayberry*, 896 F.2d 1117, 1122 (8th Cir. 1990)). Reports, memoranda, or other internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery." *United States v. Polk*, 715 F.3d 238, 249 (8th Cir. 2013); *United States v. Robinson,* 439 F.3d 777, 779–80 (8th Cir. 2006). These materials are also protected by the work-product doctrine, including internal legal analyses and charging decisions, including documents prepared in anticipation of litigation, including drafts, internal communications, and attorney analyses. See *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *United States v. Williams*, 2024 WL 4589865, at *3–4 (D. Minn. Oct. 28, 2024); *United States v. Nobles*, 422 U.S. 225, 238 (1975); *United States v. Robinson*, 439 F.3d 777, 779–80 (8th Cir. 2006). RANK's request for inter-agency communications is overbroad, immaterial, speculative, and seeks protected work product under a non-recognized defense. Therefore, production should be denied.

c. *Law Enforcement Training Materials and Policies (Bullets E and F, ECF 37 at 2)*

RANK seeks broad categories of law enforcement training materials and internal policies without identifying any legal basis or demonstrating materiality. See *United States v. Bryan*, 868 F.2d 1032, 1082–83 (9th Cir. 1989); *United States v.*

*Ivers*, 2023 WL 2182327, at *2 (D. Minn. Feb. 23, 2023). Conclusory assertions that the materials are "material to the preparation of the defense" are insufficient. See *United States v. Krauth*, 769 F.2d 473, 476 (8th Cir. 1985); *United States v. Ivers*, 2023 WL 2182327, at *2. The requested training records and curricula are unrelated to the conduct charged and overbroad.

Requests for agency-wide internal training or policies regarding collection of information on civilians are similarly untethered, often containing opinions, legal guidance, and policy interpretations protected as attorney work product or deliberative process materials. See *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *United States v. Nobles*, 422 U.S. 225, 238 (1975); *United States v. Williams*, 2024 WL 4589865, at *3–4 (D. Minn. Oct. 28, 2024); *United States v. Robinson*, 439 F.3d 777, 779–80 (8th Cir. 2006).  RANK has not identified specific documents or explained how production would impact her defense. Compliance would require review of voluminous materials across multiple systems and agencies, imposing a substantial burden disproportionate to any speculative value. See *Bryan*, 868 F.2d at 1082–83. Accordingly, the requests are overbroad, speculative, immaterial, and should be denied.

### d. Impeachment Materials (Bullet G, ECF 37 at 2)

RANK seeks impeachment material for "each federal agent" involved in the case who had contact with RANK. This request is overbroad because it is not limited to testifying witnesses nor individuals involved in her arrest. The

Government's obligations under *Brady* and *Giglio* extend only to material impeachment evidence for witnesses it intends to call at trial, not every officer who had contact with the defendant. See *United States v. Spencer*, 753 F.3d 746, 748 (8th Cir. 2014); *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). *Brady* does not require pretrial disclosure so long as the information is provided in time for effective use at trial. See *Spencer*, 753 F.3d at 748.

As it relates to trial witnesses, the government objects to *early* disclosure of these materials as beyond the scope of those cases. *Brady* is not a "discovery device." *United States v. Bowie*, 618 F.3d 802, 818 (8th Cir. 2010). Indeed, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Madsen v. Dormire*, 137 F.3d 602, 605 (8th Cir. 1998).

To the extent RANK seeks impeachment material for non-testifying individuals, the request exceeds the scope of *Brady* and *Giglio* and should be denied.

## II. REQUEST FOR RULE 404(B) MATERIALS IS BEYOND ITS SCOPE

The Government objects to RANK's requests for production of alleged prior bad acts or misconduct of government witnesses under Rule 404(b) as misdirected and beyond the scope of the rule. Rule 404(b) governs the admissibility of evidence concerning other crimes, wrongs, or acts of the defendant, not government witnesses. It does not provide a method for pretrial discovery of law enforcement personnel. Requests framed under 404(b) that seek information about alleged witness misconduct or prior acts are therefore improper.

12

Evidence of prior acts or alleged misconduct by government witnesses may, in limited circumstances, be relevant for impeachment purposes; however, such information is not governed by Rule 404(b). RANK's requests based on alleged misconduct or "retaliation" are speculative, untethered to any cognizable defense, and lack any showing of materiality, and are therefore without merit under *Brady* or *Giglio*. See *Mazzulla*, at 1091 (8th Cir. 2019) (denying motion for disclosure where defendant offered no specific factual basis suggesting likely material evidence). The attempt to invoke Rule 404(b) to obtain records of alleged witness misconduct for general character or propensity purposes is also improper. See *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (evidence of other acts is inadmissible to show character to prove action in conformity therewith).

Consistent with the Scheduling Order and the Federal Rules of Evidence, the Government will disclose any 404(b) evidence it intends to use against RANK at trial no later than 21 days prior. At this stage, no such evidence has been identified. Only evidence of the defendant's prior acts admissible for a proper purpose under Rule 404(b) will be disclosed. Accordingly, RANK's motion to compel 404(b) materials relating to government witnesses should be denied.

## III. *BRADY, GIGLIO* AND RELATED OBLIGATIONS

The Government has fully complied with its obligations under *Brady*, *Giglio*, and related authorities, as well as any Court-issued discovery orders. RANK's requests for evidence of alleged law enforcement misconduct are untethered to any

13

cognizable defense or material impeachment evidence and therefore fall outside the Government's disclosure obligations. This Court also issued a *Brady* Obligation Order on January 09, 2026, making RANK's request largely moot.

*Brady* is not a general discovery tool. The Government's obligations are limited to material evidence. See *United States v. Bowie*, 618 F.3d 802, 818 (8th Cir. 2010). Evidence is material under *Brady* only if there is a reasonable probability its disclosure would affect the outcome of the proceeding. See *United States v. Bagley*, 473 U.S. 667, 682 (1985). RANK's claim of "retaliation" is not a cognizable defense to 18 U.S.C. § 111. Nonspecific allegations regarding officer motive or purported retaliatory intent are not material unless they directly negate an element of the offense or support a recognized defense. See *United States v. O'Brien*, 391 U.S. 367, 377 (1968). RANK provides no factual basis connecting the requested materials to a cognizable defense.

*Giglio* does not wholesale discovery of law enforcement records. Requests for evidence of prior interactions, complaints, or alleged "retaliation" for all witnesses is beyond its scope and untethered to credibility. *Giglio* applies only to testifying witnesses. See *United States v. Bagley*, 473 U.S. 666-67 (1985). RANK's speculative requests regarding non-testifying agents exceed the Government's obligations and should be denied.

14

## CONCLUSION

The United States has fully complied with its discovery obligations under Rule 16, *Brady*, *Giglio*, and related authority. RANK's requests are speculative, overbroad, untethered to the conduct charged, and immaterial. They seek voluminous materials unrelated to the offense, attempt to compel disclosure of information not tied to any legally recognized defense and improperly rely on Rule 404(b) to obtain law enforcement misconduct or prior acts of non-defendant witnesses. RANK's asserted "retaliation" theory is not a cognizable defense under 18 U.S.C. § 111, rendering the requested materials irrelevant and immaterial. Accordingly, the motions should be denied in their entirety.

Dated: April 6, 2026

Respectfully Submitted,

DANIEL N. ROSEN
United States Attorney

*s/William L. Richards*
BY: William L. Richards
Special Assistant U.S. Attorney